MORRIS N. HINKES t/a LITTLE JOE'S TAVERN, PLAIN-TIFF, v. CITY OF NEWARK, A MUNICIPAL CORPORA-TION, DEFENDANT.

District Court
Essex County

Decided September 27, 1972.

*Mr. Jacob M. Goldberg,* for plaintiff.

*Mr. Melvin Simon,* Assistant Corporation Counsel, for defendant (*Mr. William H. Walls, Corporation Counsel,* attorney).

FEINBERG, J. D. C. On August 7, 1972 this court entered judgment for plaintiff in the sum of $1,088.20 and costs for damages recoverable by plaintiff under *N. J. S. A.* 2A:48–1:

Liability of municipality or county; action

When, by reason of a mob or riot, any property, real or personal, is destroyed or injured, the municipality if it has a paid police force, in which the mob congregates or riot occurs, or, if not in such a municipality, the county in which such property is or was situate, shall be liable to the person whose property was so destroyed or injured for the damages sustained thereby, recoverable in an **action by or in** behalf of such person.

This matter arises as a result of a motion by the plaintiff to add interest to the judgment in accordance with *R.* 4:42–11(b):

In tort actions, including products liability actions, the court shall include in the judgment interest at 6% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date of the tort, whichever is later. * * *

The question before the court on this motion is whether plaintiff's action is a "tort action" within the meaning of the above rule.

"Tort" has been defined as a "private or civil wrong or injury. A wrong independent of contract." *Black's Law Dictionary* (4th ed. 1951), at 1660.

Plaintiff's assertion is in derogation of common law and must be strictly construed.

In *A & B Auto Stores, etc. v. Newark,* 106 *N. J. Super.* 491 (Law Div. 1969), aff'd 59 *N. J.* 5 (1971), the court held:

Upon the presentation of all the evidence, the court granted a motion for judgment as a matter of law in favor of the city on the negligence count, and concluded that the failure of a municipality to prevent crimes, control mobs, apprehend criminals or prevent damage to property or persons encompasses a governmental function in the conduct of which the city is immune from common law tort liability. * * * [106 *N. J. Super.* at 494; citations omitted]

And again the court held:

It is, therefore, evident in this State that with regard to certain of its activities, a municipality should not be subject to tort liability regardless of how those activities are defined or labeled. * * * [At 496]

And, at 497, the court quoted from an opinion by Chief Justice Weintraub in *Fitzgerald v. Palmer,* 47 *N. J.* 106, 109 (1966):

A private entrepreneur may readily be held for negligent omissions within the chosen ambit of his activity. But the area within which government has the power to act for the public good is almost without limit, and the State has no duty to do everything that might be done. Rather there is a political discretion as to what ought to be done, as to priorities, and as to how much should be raised by taxes or borrowed to that end. If government does act, then, when it acts in a manner short of ordinary prudence, liability could be judged as in the case of a private party. So if a road were constructed of a design imperiling the user, the issue of fault would present no novel problem. But whether a road should have four or six or eight lanes, or there should be dividers, or circles or jughandles for turns, or traffic lights, or traffic policemen, or a speed limit of 50 or 60 miles per hour—such matters involve discretion and revenue and are committed to the judgment of the legislative and executive branches. As to such matters, the question is whether a judge or jury could review the policy or political decisions involved without in effect taking over the responsibility and power of those other branches.

And, at 498, the court quoted from Van Alstyne, "Governmental Tort Liability: A Decade of Change," 1966 *U. Ill. L. F.* 919, 975 (1966):

The principal rationale of the new version articulates a felt need to prevent juries, or judges sitting as triers of fact, from passing judgment upon decisions made by public officials in areas of policy

and discretion where, by law, fundamental responsibility for making such decisions has been vested in them. It seems clear that the notion of fault has diminished relevance in this context. Wholly arbitrary and capricious governmental action is rare, indeed; and it is difficult to discern how a lay jury can decide rationally in the artificial environment of a civil trial, that a responsible public official or board acted negligently in making a particular discretionary decision which ultimately had tort consequences. Almost invariably, a reasonable man could have decided either way; the presence of discretion and judgment as elements in the decisional process necessarily implies choice between alternatives which are equally defensible as rational conclusions drawn from good faith evaluation of competing arguments and policies. Since a rational determination in this context is inconsistent with the fault concept which underlies most tort law, the "discretionary immunity" has strong appeal along traditional conceptual lines.

It is necessary to examine the intent of the Legislature concerning the question of interest, and in this respect the case of *Lindsay v. Boles,* 61 *N. J. Super.* 516 (1960), is of importance:

As Mr. Justice Heher said in *Alexander v. N[ew] J[ersey] Power & Light Co.,* 21 *N. J.* 373, 378 (1956):

"[A] statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. * * * The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. *Wright v. Vogt,* 7 *N. J.* 1 (1951). It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. *Caputo v. Best Foods, Inc.* 17 *N. J.* 259 (1955)." [At 521]

And again:

As Mr. Justice Heher said in *Consolidated Police & Firemen's Pension Fund Commission v. City of Passaic*, 23 *N. J.* 645, at page 652 (1957):

"* * * 'Interest' is an 'exaction for past due obligations and in essence is a penalty or in the nature of a penalty.' * * * Interest does not inhere in a tax as a legal incident. * * * 'Interest when allowed is in contemplation of law, damages for the illegal detention of a legitimate claim or indebtedness.' * * * It is the 'computation allowed by law, or fixed by the parties, for the use or forebearance of money, or as damages for its detention, * * *.' * * * In equity, interest has been allowed 'either by way of damages for the detention of a fund, or by way of profit earned or advantage attained.' * * * Chancery considers the equities of the case. * * *." [at 524]

Consideration of these cases indicate the intent of the Legislature to make the taxpayers of the community responsible for damage to property of innocent owners resulting from a breakdown in law enforcement, but it would appear that it would be against public policy to extend the intent of the Legislature to punish such taxpayers by a further penalty in the guise of interest.

Motion is therefore denied.